In re the Marriage of Joyce E. **HORNER, Petitioner, Appellant,**

v.

**Stephen J. HORNER, Respondent.**

No. C5–84–889.

Court of Appeals of Minnesota.

Feb. 26, 1985.

Calvin P. Johnson, Mankato, for appellant.

Garry D. Barnett, Regan & Barnett, Mankato, for respondent.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

Following appellant Joyce Horner's petition for marital dissolution, the parties stipulated on all issues except custody of their two minor children. They agreed that they should share legal custody, but each requested physical custody of the children. The trial court awarded physical custody to respondent Stephen Horner, and Joyce Horner appealed. We reverse and remand.

## FACTS

The custody dispute involves two children, Paul, born in November 1978, and J.J., born in January 1982. The family lived in Willmar, Minnesota, where Joyce Horner taught school and Stephen Horner worked for a radio station, before moving to North Mankato in November 1982.

Both parties describe each other as caring and competent parents, and each is willing and able to serve as an excellent custodial parent for the children. Joyce Horner has a teaching degree and expects to be fully employed, earning $16,000 to $17,000 per year. Stephen Horner earns approximately $30,000 per year.

Joyce Horner and Stephen Horner decided, before the children were born, that they should be baptized and taught in the Catholic faith. They agreed that the children should continue to be raised in the Catholic faith following the marital dissolution. Joyce Horner testified that she would continue to raise the children in the Catholic church, although she is a Baptist. At the hearing Stephen Horner expressed concern that the children would not be given proper training in Joyce Horner's custody because she lacked knowledge of Catholicism and had once neglected to take the children to church.

At trial Joyce Horner testified that she did not know where she would live following the dissolution. She indicated that she was considering moving to Arizona, her home state, where her friends and family were and where employment looked promising. She also testified, however, that it was more important to her to have physical custody of the children than to move to Arizona.

The trial court awarded custody to Stephen Horner and explained the basis for its decision in a memorandum that included the following language:

Given the fact that it would be in the best interests of the children to have the family remain intact, it would seem that in fairness, the party that is desirous of terminating the dissolution [sic] should give up some claim to the children as result of their choice which would ostensibly be contrary to the best interests of the children. The Legislature has deemed, however, that conduct of the parties, including the right to proceed with the dissolution should not be considered as a factor.

## ISSUE

Did the trial court properly apply Minn. Stat. § 518.17, subd. 1 (1982), in determining physical custody of the parties' two children?

## ANALYSIS

It has long been this state's policy that fault in bringing about a marital dissolution not be considered when awarding custody of minor children. *See, e.g., French v. French,* 236 Minn. 439, 441, 53 N.W.2d 215, 217 (1952); *Kaehler v. Kaehler,* 219 Minn. 536, 539, 18 N.W.2d 312, 314 (1945). The only valid concern is the best interest of

the child. *See* Minn.Stat. § 518.17, subd. 3 (1982).

In its memorandum the trial court specifically noted that Joyce Horner initiated the marital dissolution. Although it acknowledged this state's policy not to consider a party's conduct in seeking the dissolution as a factor, it quite clearly articulated its dissenting view. We are troubled by the unmistakable suggestion that the court's custody award was influenced by Joyce Horner's decision to seek dissolution.

We are also concerned with the trial court's apparent reliance on just one of the factors outlined in Minn.Stat. § 518.17, subd. 1 (1982):

> (h) The capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in his culture and religion or creed, if any;

The parties stipulated that the children should be raised in the Catholic tradition. Each agreed to carry this out. The stipulation provides evidence of each parent's capacity and disposition to continue the religious training of the children, resulting in an equal balance on this factor. Although Stephen Horner questioned Joyce Horner's disposition to abide by the agreement, her demonstrated ability and willingness to continue training in the Catholic Church contradicts his speculations. Under the facts of this case religion is not a factor on which the trial court could rely to the exclusion of others to determine which parent's physical custody would best serve the interests of the children.

## DECISION

Because the trial court based its physical custody award on only one factor, on which the evidence indicated an equal balance, and because of our concern that the trial court may have considered fault in making its award, we reverse and remand for full consideration of all the factors listed in Minn.Stat. § 518.17, subd. 1. (1982)

Reversed and remanded.